No. 12-7061

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

RAYMONE K. BAIN, *et al.*,

*Appellants*

v.

MJJ PRODUCTIONS, INC., *et al.*,

*Appellees*

**On Appeal from the United States District Court
For the District of Columbia
Case No. 1:09-cv-00826-RCL**

**BRIEF FOR APPELLANTS**

Steven M. Pavsner
Levi S. Zaslow
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200
*Counsel for Appellants*

**This case has not yet been scheduled for oral argument.**

## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1, Appellants state as follows:

No Appellant is a publicly held corporation.  No publicly held corporation or other publicly-held entity has a direct financial interest in the outcome of this litigation.  No Appellant is a trade association.  This case does not arise out of a bankruptcy proceeding.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

In accordance with this Court's Order of January 17, 2013 and the applicable Federal and Circuit Rules, Appellants state as follows:

A) Parties *and* Amici:

    1. The following parties appeared before the district court:

        Plaintiff, Raymone K. Bain;
        Plaintiff, Davis, Bain & Associates, Inc.;
        Defendant, Michael J. Jackson;
        Defendant, MJJ Productions, Inc.; and
        Defendant, Estate of Michael Joseph Jackson.

    2. The following persons are parties in this Court:

        Appellant, Raymone K. Bain;
        Appellant, Davis, Bain & Associates, Inc.;
        Appellee, MJJ Productions, Inc.; and
        Appellee, Estate of Michael Joseph Jackson

There were no intervenors or amici in the proceedings below or in this Court.

Appellant Davis, Bain & Associates, Inc. does not have any parent companies or any publicly-held company that has a 10% or greater ownership interest in the entity.

B) <u>Rulings Under Review</u>:

The rulings under review are the June 7, 2012 Memorandum and Order by Chief Judge Royce C. Lamberth denying Appellants' motion for relief from judgment under Fed. R. Civ. Proc. 60(b)(2) (District Court ECF No. 79); and the May 7, 2010 Memorandum and Order by Judge James Robertson granting summary judgment and denying Appellants' Rule 56(f) request for discovery (District Court ECF Nos. 62 and 63, reported at *Bain v. Jackson*, 783 F. Supp. 13 (D.D.C. 2010)).

C) <u>Related Cases</u>:

None.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................ii

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ...............ii

TABLE OF AUTHORITIES ....................................................... vi

GLOSSARY OF ACRONYMS.................................................. vii

STATEMENT OF JURISDICTION......................................... 1

STATEMENT OF THE ISSUES......................................... 1

STATEMENT OF THE CASE.................................... 2

STATEMENT OF FACTS ..................................... 3

SUMMARY OF THE ARGUMENT ...................................... 12

ARGUMENT ...................................................... 13

I.   Appellants presented newly-discovered evidence, based on which the District Court should have granted relief from its judgment......................................... 13

A. The evidence Appellants presented in support of their motion was "newly discovered." ....................................................... 15

B. Appellants exercised reasonable diligence in attempting to locate the evidence before the Court's judgment........................................ 19

II.  Even if the letter was not newly-discovered evidence, it was in the possession custody, or control of Appellees who improperly withheld it......................... 25

III. In the alternative, the Court should have granted the motion for relief from judgment because the error or neglect of Appellants' counsel below resulted in a final, involuntary termination of the proceedings ..................................... 27

iv

CONCLUSION ..................................................................................... 29

REQUEST FOR ORAL ARGUMENT ...................................................... 29

CERTIFICATE OF COMPLIANCE ......................................................... 30

CERTIFICATE OF SERVICE ................................................................. 31

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808 (4th Cir. 1988) ........................................................................................... 28

*Interdonato v. Interdonato*, 521 A.2d 1124 (D.C. 1987)........................................... 10

*Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1 (D.D.C. 2000)....... 18, 19, 21, 22, 23

*Lightfoot v. District of Columbia*,
    555 F. Supp. 2d 61 (D.D.C. 2008)................................................ 14, 16, 17, 18, 19

*Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951 (4th Cir. 1987) ................................ 27

*L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234 (D.C. Cir. 1964) ................................ 28

*Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813 (D.C. Cir. 2006) ................... 14

*National Anti-Hunger Coalition v. Executive Committee of President's Private Sector Survey on Cost Control*, 711 F.2d 1071 (D.C. Cir. 1983)........................ 14, 15

*Smith v. Mallick*, 514 F.3d 48 (D.C. Cir. 2008)........................................................ 10

*Summers v. Howard Univ.*, 374 F.3d 1188 (D.C. Cir. 2004) .............................. 25, 26

*United States v. Moradi*, 673 F.2d 725 (4th Cir. 1982) ........................................... 27

## RULES

Fed. R. Civ. P. 59 ....................................................................................................... 13

Fed. R. Civ. P. 60 ...................................................................... 13-19, 21-22, 24-25, 28

## TREATISES

12-60 Daniel R. Coquillette et al., *Moore's Federal Practice - Civil* § 60.42 .... 15, 19

**Authorities upon which we chiefly rely are marked with asterisks.**

# <u>GLOSSARY OF ACRONYMS</u>

AEG          Anchutz Entertainment Group

FAB          Financial Advisory Board

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has jurisdiction under 28 U.S.C. § 1291, as this is an appeal from a final decision of the District Court.

## STATEMENT OF THE ISSUES

1.     Whether the trial court erred in deciding that a letter that Michael Jackson faxed to Appellant Raymone Bain, stating that he had not terminated her services and asking her to continue to work on his behalf, which completely refuted Appellees' defense to Appellants' claims below, was not "newly discovered evidence," where it was not in Appellants' possession and therefore could not be produced before summary judgment.

2.     Whether the trial court erred in denying Appellants' motion for relief from judgment where Appellees themselves had critical evidence that refuted their defense to Appellants' claims but failed to provide it, and where that evidence was unavailable to Appellants because their copy was removed from their office by a consultant to The Michael Jackson Company, an entity controlled by Appellees, and not returned until after summary judgment was entered against them.

3.     If the trial court did not err in concluding that the letter from Michael Jackson was not "newly discovered evidence," whether the trial court erred by

denying the motion for relief from judgment when the error or neglect of

Appellants' counsel below resulted in a final, involuntary termination of the

proceedings.

## STATEMENT OF THE CASE

Appellants Raymone K. Bain and Davis, Bain & Associates, Inc. filed this

action in the United States District Court for the District of Columbia against

Michael J. Jackson and MJJ Productions, Inc. on May 5, 2009. (JA 5.) Michael

Jackson and MJJ Productions moved to dismiss the complaint on June 18, 2009.

(JA 7.) Appellants opposed the motion. (JA 7.)

Michael Jackson died on June 25, 2009. (JA 167.) The Estate of Michael

Joseph Jackson was substituted for him.  (JA 9.)

On February 1, 2010, the Court issued an order recognizing that matters

outside the pleadings had been presented in the defendants' motion to dismiss,

stating that the motion would be considered a motion for summary judgment, and

requesting that the parties "present all the material that is pertinent to the motion."

(JA 274-75.) The parties filed additional memoranda and on May 7, 2010, the

Court issued an order and opinion granting Appellees' motion for summary

judgment.[1] (JA 375-84.)

---

[1] On July 6, 2010, Appellants moved for an extension of time to note an appeal
from the Court's order granting summary judgment. (JA 10.) The Court denied the
motion on October 15, 2010. (JA 11.)

On October 4, 2010, Appellants moved the Court to set aside the judgment based on newly-discovered evidence. (JA 385.) Appellees opposed the motion. (JA 443.) In an order and opinion issued on June 7, 2012, the Court denied Appellants' motion. (JA 465-69.)

Appellants timely noted this appeal on June 28, 2012. (JA 470.)

## STATEMENT OF FACTS

In December 2003, world-famous entertainer Michael Jackson retained Appellants, Raymone Bain and Davis, Bain & Associates, Inc., as his public relations firm. (JA 17.)  Appellants provided these services from their offices in Washington, D.C. (JA 17.) Ms. Bain served as Mr. Jackson's personal spokesperson and publicist for years thereafter, including during his highly-publicized 2005 child-molestation trial. (JA 17.)

In 2006, pleased with Ms. Bain's services, Mr. Jackson decided to expand her role beyond that of spokesperson and publicist. (JA 17-18.) In May 2006, Mr. Jackson entered into a contract with Ms. Bain for Ms. Bain to provide a variety of business and consulting services to him, including incorporating a new entity to be known as The Michael Jackson Company. (JA 31.) Among other things, Mr. Jackson retained Ms. Bain to "pursu[e] new business opportunities on behalf of Michael Jackson and The Michael Jackson Company." (JA 31.) The contract provided that, "[a]s compensation, Bain shall receive [a] 10% Finder's fee of any

Agreement(s) entered into by Michael Jackson, or the Michael Jackson Company, generated by, or due to the direct efforts of Bain and/or Bain's contacts." (JA 31.)

At the same time, Mr. Jackson entered into a second contract appointing Ms. Bain as his General Manager. (JA 34.) This agreement provided that Ms. Bain would "oversee" Mr. Jackson's "personal and business affairs, as directed by [him]." (JA 34.)

In accordance with these agreements, Ms. Bain provided substantial and valuable business services to Mr. Jackson. In 2006, Mr. Jackson faced severe financial and legal troubles. Ms. Bain selected and retained experienced and qualified accounting and legal teams to assist Mr. Jackson in addressing his myriad financial and legal troubles. (JA 18-19.) She also supervised and oversaw the payment of Mr. Jackson's regular bills and managed his day-to-day living requirements, including his travel schedule, the provision of security, and the payment of his staff. (JA 19-20.)

In June 2006, Mr. Jackson again expanded Ms. Bain's role by appointing her as his agent with respect to the use of his music catalog. (JA 36.) In this capacity, Ms. Bain approved hundreds of requests, which generated more than $10,000,000 in annual income. (JA 20.) Beginning in December 2006, Ms. Bain advised Mr. Jackson to authorize and participate in a twenty-fifth anniversary re-release of his famous album, *Thriller*. (JA 21-22.) Mr. Jackson, at Ms. Bain's urging, agreed to

do so. (JA 21-22.) Ms. Bain took an early leading role in planning, coordinating, and promoting this release. (JA 21-22.)

In January 2007, Ms. Bain initiated negotiations with the Anchutz Entertainment Group ("AEG") for a comprehensive entertainment agreement to include recording and film projects and a series of concerts at the O2 Arena in London, England. (JA 22.) Ms. Bain participated in several meetings with AEG executives to negotiate this agreement. (JA 22.) To Ms. Bain's knowledge at the time, these negotiations were ongoing. (JA 22.)

Due to Mr. Jackson's severe financial difficulties in 2006 and 2007, Ms. Bain created and served on a six-member Financial Advisory Board ("FAB") to oversee Mr. Jackson's finances. (JA 22-23.) One of the activities of the FAB involved refinancing a massive loan that Mr. Jackson had taken out against his music catalog, in order to generate cash to pay persons and entities to whom he owed substantial sums of money. (JA 22-23.) Included among those to whom Mr. Jackson owed money was Appellant Raymone Bain, who by that time had accrued unpaid salary of $270,000 (nine months at $30,000 per month), had personally paid some of Mr. Jackson's bills and had loaned him money amounting to another $218,820.05, for a total due of $488,820.05. (JA 83-84, 195.)

In December 2007, before the loan closed, attorney Frank Salzano contacted Ms. Bain via e-mail and requested that she sign a "form payment release," or

"form agreement," "to clean all past debts and liabilities of Mr. Jackson." (JA 101.)

In a telephone discussion with another of Mr. Jackson's new lawyers, L. Londell

McMillan, Mr. McMillan assured Ms. Bain that the "form release" related only to

the "past due consultant fees" and loans that comprised the $488,820.05. (JA 194,

324.) When Ms. Bain expressed reluctance to sign the "form release" Mr.

McMillan threatened that if she did not sign the document, neither she nor any of

Mr. Jackson's other employees or consultants would be paid past-due fees that they

were owed. (JA 194, 324.)

Before signing the "form release", Ms. Bain called Mr. Jackson and asked

him why she and others should have to sign such a document in order to obtain

past-due amounts that they were indisputably due. (JA 195.) As set forth in the

Affidavit she filed in Opposition to Appellees' motion for summary judgment:

> Michael Jackson told me that he would not sign the release and he did not
> want his employees—including me—to feel blackmailed into signing any
> document in order to be paid. He explicitly told me that I should not sign the
> release and if I signed it, he told me he believed the release would not bind
> me, since he (Michael Jackson) would not sign it in any circumstances.

(JA 195.)

Based on her understanding that the "form release" related only to past-due

fees and loans and did not relate to future or forthcoming fees that she had already

earned; on the threats by Mr. Jackson's lawyers that if she did not sign it no one

would be paid the amounts that they were indisputably due; and on Mr. Jackson's

6

assurance that the "form release" would not bind her in any event because he would not sign it, Ms. Bain signed the document.  (JA 104-06.)  The refinance was completed in December 2007 and provided Mr. Jackson more than $25,000,000 in cash. (JA 23.)

After the "form release" was signed and the refinancing closed, Ms. Bain continued her work for Mr. Jackson and he continued to request her assistance. Most notably, he had tasked her with locating a permanent home for him in Las Vegas and she had identified property owned by the Sultan of Brunei. (JA 410.) In early 2008, when Mr. Jackson inquired about the property in Las Vegas, Ms. Bain raised the issue of the "form release." Mr. Jackson responded in writing on April 24, 2008, faxing a letter to her stating that he knew nothing about the "release", that he had never terminated her services, and that he still expected Ms. Bain to perform services under their prior agreements. (JA 414.)  The faxed letter stated:

# MICHAEL JACKSON

April 24, 2008

Ms. Raymone K. Bain
4770 Dexter Street, N.W.
Washington, D.C. 20007

Dear Raymone:

I have never terminated your services nor did I null and void any of your Agreements.

I know nothing about a release form. I neither authorized or signed the same.

Therefore, I am authorizing you to continue to communicate with Mr. Yakoob regarding the Sultan's property in Las Vegas, and to continue your role as my General Manager and President/COO of The Michael Jackson Company.

Thank you.

Sincerely,


Michael J. Jackson

(JA 414.) ("April 24th Letter".)

Ms. Bain provided the requested services after the date of the alleged release, but Mr. Jackson's communications with her continued to diminish as others interposed themselves between them. (JA 23-24.)

8

Unknown to Ms. Bain when she signed the "form release", Mr. Jackson had already received partial payment on an agreement regarding the twenty-fifth anniversary re-release of *Thriller*, a deal that had resulted from her contacts and on which she would have been due a commission under the Personal Services Agreement.  (JA 22.) Ms. Bain was not aware that Mr. Jackson received any advance compensation until February 2008.[2] (JA 22.) In or around March 2009, Mr. Jackson also entered into an agreement with AEG, which Ms. Bain had initially conceived and negotiated. (JA 24.) Ms. Bain learned of the agreement when Mr. Jackson held a press conference in London to announce a series of concerts at the O2 Arena to begin in July 2009. (JA 24.)

When Ms. Bain's demands for payment under her prior agreements were ignored, she filed this suit against Mr. Jackson and MJJ Productions, Inc. ("Appellees") in the United States District Court for the District of Columbia on May 5, 2009 to recover compensation that is due to her for the services she provided related to the re-release of *Thriller*, the AEG agreement, and other projects.

Appellees responded by moving to dismiss based on the alleged release. (JA 37.)  The Court converted the motion to one for summary judgment and requested additional briefing and relevant materials. (JA 274-75.) At no time did Appellees

---

[2] Attorney Londell McMillan, the individual advising Ms. Bain to sign the release, was aware of this crucial information but failed to disclose it to her. (JA 195.)

provide an affidavit from Mr. Jackson or any other competent evidence that he had in fact signed the alleged release, whereas Ms. Bain provided both an affidavit relating the conversation in which he told her that he would *not* sign it, and a report from a qualified document examiner expressing the opinion that there was reason to doubt the authenticity of his purported signature on the document. (JA 194-200.) Despite these genuine disputes of material fact, the court below (Robertson, J.) made no finding on the authenticity of Mr. Jackson's signature on the document, or on the absence of consideration for it.[3]  It simply held that, on its face, the alleged release barred Appellants' claims. (JA 378-83.)

The alleged release is inapplicable to Appellants' claims in this case for numerous reasons, including the fact that it applied only to past-due fees, not to fees that became due after the document was signed. Further, as the facts of the Verified Complaint showed, Ms. Bain signed the alleged release under duress and as a result of fraud. Most importantly, Mr. Jackson stated that he would not sign the alleged release and the authenticity of his alleged signature was placed in dispute by Appellants' expert.  These factual disputes and legal arguments should have precluded summary judgment, even without the dispositive April 24th Letter.

---

[3] The law, of course, is that a release must be supported by consideration other than what the releasing party is otherwise due.  *E.g. Interdonato v. Interdonato*, 521 A.2d 1124, 1134 (D.C. 1987).  *See also Smith v. Mallick*, 514 F.3d 48, 52 (D.C. Cir. 2008).

At the time Appellees moved for summary judgment, Appellants did not have a copy of Mr. Jackson's faxed April 24th Letter in their possession. As Ms. Bain explained in the affidavit submitted below:

> I knew I had correspondence from Mr. Jackson, but I could not find it. I made a diligent search of all the records and files in my office. I did not know, nor was I able to look in the Sultan of Brunei's file, which was in the possession of [a] consultant [for the Michael Jackson Company, LLC]. I looked for this file for months, spending many, many hours looking into all of the files which were in my office, but it was nowhere to be found.

(JA 411.)

Unfortunately, Appellants' counsel at the time did not bring the April 24th Letter to the attention of the Court.  Although the precise reason they did not do so is unknown, they may have thought that the fact that Ms. Bain could not locate it meant that they could not mention it.  Not knowing of the April 24th Letter in which Mr. Jackson completely disavowed the alleged release, the District Court granted summary judgment for Appellees.

It was only after the Court granted summary judgment that Ms. Bain learned that the April 24th Letter had been placed in a file related to the Sultan's property and, with other real-estate related files, removed from her office by a consultant for The Michael Jackson Company.  (JA 410.) The consultant returned the file to Ms. Bain in June 2010 and she thereafter discovered the letter. (JA 410.)

Ms. Bain moved for relief from the judgment based on this newly-discovered evidence, but the District Court denied the motion. (JA 465-69.) As explained below, the District Court's ruling was erroneous.

## SUMMARY OF THE ARGUMENT

One side in this case wants it to be decided on the merits and based on all of the relevant evidence. The other side is clinging to a technical victory below that was inarguably based on an incomplete and disputed set of facts. Whereas Appellants are seeking to present their claims based on full discovery of the facts and all material evidence, Appellees are asking the Court to affirm a judgment that is supported only by a fictional presentation of the evidence that resolved factual disputes in their favor and ignored critical and potentially-dispositive evidence.

When the District Court granted summary judgment, it did not have all of the relevant evidence before it. A crucial piece of evidence—which might be dispositive of the issues and, at a minimum, would have created disputes of material fact—was not before the Court. It was not before the Court because Appellants were unable to locate it in time, despite their diligent efforts to do so. Moreover, because the letter was received by facsimile, the original document presumably was in the possession, custody, or control of Appellees, yet the District Court also denied Appellants' request for discovery.  (JA 382.)

12

The Court should reverse the judgment below for three reasons. First, Appellants satisfied the requirements of Rule 60(b)(2) for relief from the judgment based on newly-discovered evidence. Second, even if the April 24th Letter was not "newly-discovered," it was at all times in actual or constructive possession, custody, or control of Appellees, who improperly withheld it.  Third, in the alternative, the Court should have granted relief from the judgment because it was the result of the error or neglect of Appellants' counsel below, which resulted in a final, involuntary termination of the proceedings.

## ARGUMENT

### I.    Appellants presented newly-discovered evidence, based on which the District Court should have granted relief from its judgment.

Federal Rule of Civil Procedure 60(b)(2) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[4] The District Court has formulated a four-part test a moving party must satisfy to obtain relief from a judgment based on newly-discovered evidence:

> In order to receive relief from a judgment under Rule 60(b)(2), the movant must demonstrate that (1) the newly discovered evidence [is]

---

[4] Fed. R. Civ. P. 59(b) states: "A motion for a new trial must be filed no later than 28 days after the entry of judgment."

> of facts that existed at the time of trial or other dispositive proceeding, (2) the [party seeking relief] must have been justifiably ignorant of [the evidence] despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Lightfoot v. District of Columbia*, 555 F. Supp. 2d 61, 68 (D.D.C. 2008) (internal quotation marks omitted).

In this case, the District Court found that Appellants had failed to satisfy the first two elements of the test—(1) that the evidence existed at the time of the dispositive proceeding and (2) that the party seeking relief was justifiably ignorant of the evidence despite due diligence. (JA 468.) This Court has never explicitly recognized the District Court's four-part test.  But it has recognized that to qualify as newly-discovered evidence under Rule 60(b)(2), the evidence must have been in existence at the time of trial or pertain to facts in existence at the time of trial, *National Anti-Hunger Coalition v. Executive Committee of President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1075 n.3 (D.C. Cir. 1983), and that the moving party must have been "diligent in discovering the new evidence." *Manhattan Ctr. Studios, Inc. v. NLRB*, 452 F.3d 813, 817 n.6 (D.C. Cir. 2006). The District Court's finding that Appellants failed to satisfy these requirements was clearly erroneous.

**A.     The evidence Appellants presented in support of their motion was "newly discovered."**

The District Court's finding that Appellants failed to satisfy the first element of its test is incorrect. As phrased by the District Court, Appellants had the burden of proving that "the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding." (JA 467.) The purpose of this requirement is to ensure that courts grant relief from judgment based only on facts that existed at the time of the judgment, and not based on facts that occurred after the judgment. 12-60 Daniel R. Coquillette et al., *Moore's Federal Practice - Civil* § 60.42. As this Court has explained:

> It has sometimes been suggested that, to be "newly discovered [within the meaning of FED. R. CIV. P. 60(b)(2)], evidence must have been in existence at the time of the trial. We believe, however, that evidence falls within the rule as long as it pertain[s] to facts in existence at the time of the trial, and not to facts that have occurred subsequently.

*National Anti-Hunger Coalition*, 711 F.2d at 1075 n.3 (internal quotation marks and citations omitted).

In this case, there can be no legitimate dispute that the evidence at issue was in existence at the time of the District Court's ruling granting summary judgment. The letter from Michael Jackson is dated April 24, 2008. (JA 414.) It bears two facsimile time-stamps—one of April 24, 2008, and a second of April 25, 2008. (JA 414.) The Court granted summary judgment in this case on May 7, 2010. (JA 384.)

It should therefore be undisputed that the evidence existed at the time of the District Court's ruling on summary judgment.

The District Court appears to have conflated the question of whether the evidence *existed* at the time of summary judgment with the question of whether Appellants were *aware* of the evidence at the time of summary judgment. The District Court said, "[a]s to the first [requirement], Bain's knowledge of the letter during the time of trial defeats her claim for Rule 60(b)(2) relief." (JA 468.) Quoting from its earlier decision in *Lightfoot*, 555 F. Supp. 2d at 68, the District Court stated that "[t]he first requirement limits the operation of the rule to evidence that is truly 'new,' and 'evidence cannot be newly discovered if it was known to the party at the time of trial.'"  (JA 468.) The Court concluded that "the plaintiffs were fully aware of the evidence during the litigation, and that evidence cannot be considered 'new.'" (JA 468.)

The Court thus found—based on its own prior case law—that for evidence to be considered "newly-discovered" under Rule 60(b), it must have been entirely unknown to the movant until after the judgment. In this case, Ms. Bain was aware that Michael Jackson had faxed her a letter stating that he never signed a release or intended that there be a general release. But she had not seen the letter in years and did not know whether it still existed. The District Court found that because she had

16

knowledge that the letter at one time existed, it could not be considered "newly-discovered evidence."

The standard that the District Court applied in this regard is found nowhere in the text of Rule 60(b) or in this Court's decisions applying the Rule. Rule 60(b)(2) allows the District Court to grant relief from a judgment based not on "new evidence," but on "newly *discovered* evidence." In this case, Ms. Bain knew that certain evidence existed at one time, but she did not discover that it still existed until after the judgment. The evidence was not "new," but it was newly-discovered. Nothing in the text of the Rule precludes this from being considered "newly discovered evidence."

This Court has never recognized the standard, espoused by the District Court, that "evidence cannot be newly discovered it was known to the party at the time of trial." *Lightfoot*, 555 F. Supp. 2d at 68. Moreover, the cases in which the District Court has recognized this standard demonstrate that it is inapplicable under the circumstances of this case.

In *Lightfoot*, the plaintiff sought relief from a judgment against him on his FMLA claim based on two medical certificates that were not presented to the Court before it entered judgment. One of the certificates was in the plaintiff's possession at the time the Court entered judgment. As for the second, the plaintiff's only explanation for not presenting it earlier was "inadvertence." *Lightfoot*, 555 F.

17

Supp. 2d at 68. It is in this context that the Court, quoting from its earlier decision

in *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 5 (D.D.C. 2000), explained that

"'evidence cannot be newly discovered if it was known to the party at the time of

trial. . . . evidence in the possession of the party before the judgment was rendered

. . . is not newly discovered evidence that affords relief [under Rule 60(b)(2)].'"

*Lightfoot*, 555 F. Supp. 2d at 68 (quoting *Lans*, 110 F. Supp. 2d at 5).

        In *Lans*, the plaintiff sought relief from a judgment based on a contract that

he had known to exist, but that he did not locate until after the judgment. *Lans*, 110

F. Supp. 2d at 5. The Court found that the plaintiff knew about the contract at the

time of the judgment, as he had signed it and acknowledged that he knew about it.

*Id. The Court further found that the contract was constructively within his*

*possession at the time of the judgment because it was in the possession of his*

*accountant, who was his agent*. *Id*. It was in this context that the Court recognized

that "evidence cannot be newly discovered if it was known to the party at the time

of trial," and "evidence in the possession of the party before the judgment was

rendered … is not newly discovered evidence that affords relief." *Id*. (internal

quotation marks omitted). Given that the contract was known to the plaintiff *and*

*was constructively within his possession*, the Court held that it was not newly-

discovered evidence. *Id*.

18

As *Lightfoot* and *Lans* demonstrate, the purpose of the requirement that newly-discovered evidence be "unknown" to the moving party at the time of the judgment is to exclude evidence that the party knew about, but simply chose not to present until after the judgment. In other words, "the moving party may not rely on the fact that he or she decided not to offer known evidence at the trial." 12-60 Daniel R. Coquillette et al., *Moore's Federal Practice - Civil* § 60.42.

In this case, the April 24th Letter was not "known" to Ms. Bain, nor was it in her possession, until after the trial. To be sure, Ms. Bain knew that the letter had existed at one time. But she did not know that it *still* existed until after the judgment. This was not evidence that was within her knowledge, possession, and control before the judgment but simply not presented. Rather, at the time of the judgment, it was unknown to Ms. Bain whether the letter still existed, and it was not within her actual or constructive possession or control. It was not until after the judgment that she learned that the letter still existed and gained possession of it. It therefore constituted newly-discovered evidence.

**B.      Appellants exercised reasonable diligence in attempting to locate the evidence before the Court's judgment.**

Rule 60(b)(2) allows the Court to grant relief from a judgment based on "newly discovered evidence that, *with reasonable diligence*, could not have been discovered in time to move for a new trial under Rule 59(b)." (Emphasis added.) Here, Appellants were diligent in their efforts to locate the letter from Michael

19

Jackson before summary judgment, but were unable to do so. In an unrebutted affidavit, Ms. Bain attested: "I knew I had correspondence from Mr. Jackson, but I could not find it. I made a diligent search of all the records and files in my office." (JA 411.)  Appellees offered no evidence whatsoever to rebut Ms. Bain's attestation that she "made a diligent search of all the records and files in [her] office." Ms. Bain could not have been more diligent in her efforts to locate this evidence, as she searched every file in her possession.

The only reason Ms. Bain did not locate the April 24th Letter earlier was because it had been misfiled by someone else in a file relating to a particular piece of real property that Mr. Jackson had considered purchasing from the Sultan of Brunei, and then removed from her office by a consultant to The Michael Jackson Company.  At the time of summary judgment, the file containing the letter was outside the possession, custody, or control of Appellants. Moreover, it was in the constructive possession, custody, or control of Appellees, as the copy faxed to Ms. Bain was in the possession of a consultant to The Michael Jackson Company, LLC, a company controlled by Mr. Jackson, and the original was presumably within the possession, custody or control of Mr. Jackson's Estate, a defendant below.  Thus, not only did Ms. Bain conduct a thorough search of all of her files, and not only was the letter outside her possession, custody, or control, but it was actually within the possession, custody, or control of the Appellees.

20

Furthermore, even though Ms. Bain did not know that the letter was in the Sultan's file or have possession of the file—or even have a right to possession of the file—she nonetheless conducted a diligent search for this particular file. In her affidavit, which is unrebutted in the record, Ms. Bain attested: "I did not know, nor was I able to look in the Sultan of Brunei's file, which was in the possession of the consultant. I looked for this file for months, spending many, many hours looking into all of the files which were in my office, but it was nowhere to be found." (JA 411.)

Ms. Bain thus conducted an extensive search for this evidence. Rule 60(b)(2) requires only that a movant demonstrate "reasonable diligence" in her efforts to locate missing evidence. In this case, Ms. Bain could not have conducted a more thorough search for the letter and should have been granted relief from the Court's judgment to present this critical evidence in support of her claims.

The District Court found that Ms. Bain failed to exercise "due diligence" because she did not inform the Court of the missing evidence before it granted summary judgment. The Court relied entirely on its earlier decision in *Lans*, 110 F. Supp. 2d at 6. In that case, as noted above, the Court found that the plaintiff had failed to exercise reasonable diligence in locating a contract, which was in the possession of his accountant. *Id*. The Court found it dispositive that the plaintiff knew the contract existed, but simply could not locate it. *Id*. Although the case

21

could have been resolved based on the fact that the contract was *constructively* in the plaintiff's possession the entire time, the Court went on to state, "if [the plaintiff] could not remember where the Clarification-Contract was, he should have notified the Court and the defendants as to its potential existence and requested time to locate it." *Id*.

In this case, the Court relied on this language from its earlier decision in *Lans*. The Court concluded, "Bain knew of the 2008 letter's existence, and the plaintiffs failed to reference it in any of their filings with the Court. . . . When a party fails to make any mention on the record of a relevant document of which it has knowledge, the party cannot be said to have conducted due diligence in attempting to procure it." (JA 469.)

The District Court's ruling is incorrect for two reasons. First, it is inconsistent with the language of Rule 60(b). There is nothing in the text of the Rule—or in this Court's cases applying the Rule—that requires a party to "make a mention" on the record of missing evidence. What the Rule requires is "reasonable diligence" and facts showing why reasonable diligence did not reveal the existence of the missing evidence. Here, Ms. Bain exercised extraordinary diligence in searching for the letter. She described her efforts in an affidavit that is uncontradicted in the record. She also provided an explanation of why, despite her reasonable diligence, she was not able to locate the letter. Simply put, she searched

all of her files, did not know the letter was in the Sultan's file, searched for the

Sultan's file anyway, but was unable to obtain it because it was in the possession

of a consultant for an entity controlled by the Appellees. Considering Ms. Bain's

extensive efforts to locate the April 24th Letter, it was unfair and improper for the

District Court to create an even higher standard by holding that she was required to

also alert the Court and Appellees to the existence of the letter and seek their help

in locating  a letter that they had but she did not.  This heightened standard, based

on a passing reference by the District Court in *Lans*, is found nowhere in the text of

the Rule and should not be superimposed on the Rule by this Court.

Moreover, even if there was a requirement for Appellants to seek the

assistance of the Court in locating the missing evidence, they actually did so in this

case. Appellees' motion for summary judgment was originally filed as a motion to

dismiss the complaint. But because Appellees introduced evidence outside the

pleadings— the alleged release that they argued was dispositive of Appellants'

claims— the District Court converted the motion to one for summary judgment.

Appellees were thus permitted to move for summary judgment based on an alleged

release before Appellants were allowed to conduct any discovery regarding the

validity or authenticity of the release.

In their opposition to the initial motion to dismiss, Appellants expressly requested that the Court permit them to conduct discovery regarding the validity and authenticity of the release:

> In this case, the Release is clearly outside of the pleadings and the case is in its infancy. There are numerous factual questions regarding the validity and authenticity of the Release which will be illuminated through discovery including but not limited to: 1) the intent of the parties in entering into the Release, 2) the representations and/or omissions made by Mr. Jackson and his counsel about material facts that relate to the Release, 3) the facts and circumstances surrounding the drafting, presentation and negotiation of the Release, and 4) the authenticity of Mr. Jackson's signature.

(JA 85.)

In a supplemental memorandum, Appellants again requested that the Court permit them to conduct discovery regarding the alleged release:

> Plaintiffs expect that, given the opportunity to engage in discovery, they will discover additional evidence to support that the purported release in this case was obtained fraudulently and also was not contemplated to be the all-encompassing release that Defendants now suggest the release is. . . . Ms. Bain's affidavit, at a bare minimum, should lead the Court to conclude that discovery must be allowed in this case so that Plaintiffs claims are not snuffed out at this very-preliminary stage of the proceedings.

(JA 191.)

Thus, even if Appellants had an obligation under Rule 60(b)(2) to request the Court's assistance in locating the missing evidence, they did so by specifically and repeatedly requesting that the Court allow discovery to enable them to explore the validity and authenticity of the alleged release. Discovery would presumably

24

have revealed the existence of the letter from Michael Jackson, as it was in the

possession, custody, or control of a consultant to an entity they controlled—and

presumably in Appellees' as well—the whole time.

In sum, whether the issue is considered under the reasonable diligence

standard set forth in Rule 60(b)(2) or the heightened standard created by the

District Court, Appellants satisfied the due diligence requirement and their motion

for relief from judgment should have been granted.

## II.   Even if the letter was not newly-discovered evidence, it was in the possession custody, or control of Appellees who improperly withheld it.

Even assuming, *arguendo*, that the 2008 letter was not "newly discovered,"

the judgment should be set aside due to the misconduct of the defense.  Rule

60(b)(3) permits a court to relieve a party from a final judgment because of "fraud

(whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other

misconduct of an adverse party."  *Summers v. Howard Univ.*, 374 F.3d 1188, 1192

(D.C. Cir. 2004).  The "other misconduct of an adverse party" is distinct from

fraud or misrepresentation.  *Id.*, at 1192-93.

In *Summers*, this Court recognized that the affirmative failure to disclose

information or produce discoverable materials to an opposing party in discovery

25

can rise to this level. *Id.*, at 1193. In that case, the plaintiff engaged in efforts to conceal the existence and information related to a particular lawsuit. *Id.*[5]

The defense's actions in this case are far worse than plaintiff's actions in *Summers*. In *Summers*, the plaintiff simply did not reveal certain information. In other words, it was a non-affirmative concealment. In this case, Appellees' agent actually took physical evidence from Appellants' office.[6] Furthermore, Appellees moved the Court for summary judgment based entirely on a "release" which they had at least constructive knowledge, and presumably actual knowledge, that Mr. Jackson had disavowed in writing. Yet, they never even informed the Court of the April 24th Letter. Thus, here there was an affirmative taking and a concealment – well beyond the conduct that would have warranted a new trial in *Summers*.

Furthermore, this error directly prejudiced Ms. Bain. The District Court dismissed this case on a motion for summary judgment where Ms. Bain was lacking this crucial piece of evidence. Then, on the motion for new trial, the District Court declined to consider the impact of the April 24th Letter because Ms. Bain was unable to produce it in response to the motion for summary judgment.

---

[5] In that case, the Court ultimately concluded that there was simply no prejudice or harm to the defense. As such, a reversal was not warranted.

[6] Appellants did not allege below and do not allege here that the consultant intentionally removed the April 24th Letter with any sinister motive. Rather, Appellants' averred below that the April 24th Letter had been misfiled and was not known to be among the files removed by the consultant. (JA 410-11.) While an intentional removal would be more egregious, an inadvertent removal has the same effect.

Thus, Ms. Bain suffered prejudice to the most extreme degree: dismissal of her case.

**III.    In the alternative, the Court should have granted the motion for relief from judgment because the error or neglect of Appellants' counsel below resulted in a final, involuntary termination of the proceedings.**

In opposing summary judgment, Ms. Bain's prior counsel submitted a Rule 56(f) affidavit explaining that plaintiffs needed discovery in order to sufficiently oppose summary judgment. Specifically, he noted that he required discovery to inform the Court as to "Mr. Jackson's intent as to the release agreement." The District Court (Lamberth, J.) concluded that this statement lacked the requisite specificity to raise the issue of the April 24th Letter.

As such, the Court granted summary judgment because Appellants' former counsel was not specific enough in his Rule 56(f) affidavit. This imprecision on the part of Appellants' former counsel resulted in a final involuntary termination of the proceedings.

The United States Court of Appeals for the Fourth Circuit has recognized that clients should not be held accountable for the acts and omissions of their attorneys where the errors or neglect result, or would result, in a final, involuntary termination of proceedings. *See, e.g.*, *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987) (reversing default judgment as sanction for discovery abuses); *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982) (setting aside a

27

default judgment because "justice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings.").

In *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988), a default judgment case, the Fourth Circuit applied these same principles in reviewing the denial of a Rule 60(b) motion for relief from the judgment. There, that court noted that the district court was required to distinguish between the fault of the defense's attorney and the fault of the defendant. *Id.* at 811-12. The court noted that the district court "lumped [the defendant] and its attorney together in finding that 'the defendant is the author of its own demise.'" *Id.*

This Court has recognized these principles at least implicitly, if not explicitly. In *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235-36 (D.C. Cir. 1964), this Court recognized that a plaintiff's case should not be dismissed due to the gross neglect of his or her counsel. *Id.*, at 235-36. Specifically, the Court stated that Rule 60 relief can be afforded when one's counsel grossly neglects a client's case. *Id.*

Here, the District Court made no finding on the record as to any relative blame as to the lack of specificity in the plaintiffs' Rule 56(f) affidavit. In fact, the District Court erred in the same fashion as did the court in *Augusta Fiberglass*

*Coatings*:  it "lumped [the defendant] and its attorney together."  This was especially important in this case given that Appellants' former counsel signed and submitted his own Rule 56(f) affidavit.  At the very least, the District Court should have considered whether Appellants' bore any blame for their counsel's failure.  Given the failure to consider this important aspect of the case, the District Court's order should be vacated and this case remanded for further proceedings, including discovery.

## CONCLUSION

For the foregoing reasons, Appellants request that the Court vacate the judgment below and remand this case for further proceedings, including discovery.

## REQUEST FOR ORAL ARGUMENT

Appellants respectfully request oral argument because they believe that oral argument will assist this Court in deciding important questions regarding the issues addressed in the briefs.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/   Steven M. Pavsner_____
Steven M. Pavsner
Levi S. Zaslow
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200
*Counsel for Appellants*

29

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Fed. R. App.

P. 32(a)(7)(B), as the brief contains 7,800 words, including the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as the brief

has been prepared in proportionally-spaced typeface using Microsoft Word in 14

point Times New Roman font.

As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned relied upon the

word count of a word-processing system in preparing this certificate.

I understand that a material misrepresentation can result in the Court's

striking the brief and imposing sanctions.

/s/   Steven M. Pavsner_____
Steven M. Pavsner

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2013, I electronically filed the foregoing

brief for Appellants with the Clerk of the Court using the CM/ECF system, which

sent electronic notification of such filing to the following CM/ECF participants:

Henry W. Asbill, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Jeremiah T. Reynolds, Esq.
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, Third Floor
Santa Monica California 90401


/s/   Steven M. Pavsner_____
Steven M. Pavsner